IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DONNA GOLDEN,<br>             Plaintiff,<br><br>       v.<br><br>BRISTOL TOWNSHIP,<br>JAMES TULLY, JOHN LANCIERI, and<br>KENNETH MARGERUM,<br>             Defendants. | CIVIL ACTION<br>NO. 14-3858 |

**Jones, II     J.**                                                                                          **February 12, 2016**

## MEMORANDUM

In her Complaint, (Dkt No. 1, Complaint [hereinafter Compl.]), Donna Golden ("Plaintiff") sued the Township of Bristol, Pennsylvania ("the Township"), and three police officers (collectively "Defendant Officers"): James Tully ("PO Tully"), John Lancieri ("PO Lancieri"), and Kenneth Margerum ("PO Margerum"). The Township of Bristol has moved for summary judgment on all claims asserted against it.

In her Complaint, Plaintiff alleged that (1) Defendant Officers subjected Plaintiff to unlawful arrest, unlawful use of force, and malicious prosecution in violation of the Fourth and Fourteenth Amendments, and the State law torts of assault, battery, false arrest, false imprisonment, and malicious prosecution (Compl. ¶¶ 51 & 53); and (2) the Township of Bristol encouraged, tolerated, ratified, and has been deliberately indifferent to numerous policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline. (Compl. ¶ 52.) Plaintiff demands compensatory damages, punitive damages, attorneys' fees and costs. The Court must evaluate whether Plaintiff may proceed against the Township on three theories of municipal liability: failure to train, failure to supervise, and failure to investigate and discipline.

On June 15, 2015, the Township of Bristol filed a Motion for Summary Judgment, (Dkt No. 15 [hereinafter MSJ]), and a Statement of Undisputed Material Facts. (Dkt No. 16 [hereinafter SOF].) On June 29, 2015, Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment, (Dkt No. 17 [hereinafter Resp.]), and a Response to Defendant's

1

Statement of Undisputed Facts. (Dkt No. 18 [hereinafter RSOF].) On July 24, 2015, Defendant filed a Reply Brief in Support of its Motion for Summary Judgment. (Dkt No. 19 [hereinafter Rep.].)

Upon consideration of the record, the Court hereby GRANTS Defendant's Motion for Summary Judgment.

### I.     Standard of Review

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted).  Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "At the summary judgment stage of proceedings, courts do not 'weigh the evidence or make credibility determinations,' but, instead, leave that task to the fact-finder at a later trial if the court denies summary judgment." *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014) (quoting *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993)).

### II.     Factual Background

#### a.     The Underlying Incident

On April 27, 2013, Plaintiff called the Bristol Township Police Department to her mother's residence after her mother, Patricia, was assaulted and denied access to her home by her boyfriend. (SOF ¶ 1; RSOF ¶ 1.) The Defendant Officers, James Tully, John Lancieri, and Kenneth Margerum, responded to the call at approximately 1:00am. (SOF ¶¶ 1-2; RSOF ¶¶ 1-2.)

The parties both fail to address any further detail regarding the events that transpired that night in their Statements of Undisputed Facts and responses thereto. However, since those events establish the underlying constitutional violations upon which the *Monell* claim must be based, this Court will briefly detail those events.

According to both parties' briefs and pleadings, Officer Tully was the first to arrive. (MSJ 3–4; Compl. ¶ 12.) According to Plaintiff, Officer Tully went into the apartment to speak with Patricia's boyfriend. (Resp. 2; Pl.'s Dep. 30:16–19.) During the course of the officers' investigation, Officer Tully states that he asked Plaintiff to return to her car multiple times. (MSJ 4.) When Plaintiff continued to remain at the scene, Officer Tully told Plaintiff she had "three seconds" to return to her car. (MSJ 4; Resp. 2–3.) After Officer Tully said this, he attempted to arrest Plaintiff. (MSJ 4; Resp. 2–3.) Plaintiff states that she was violently put into handcuffs and shoved to the ground by Defendant Tully. (Resp. 2–3.) Officer Tully claims that once Plaintiff indicated she was disabled, he decided not to arrest Plaintiff and to instead issue a summons at a later date. (MSJ 4; Pl.'s Dep. 43–44.)

### b. The Trial

On May 3, 2013, Officer Tully filed a criminal complaint against Plaintiff. (MSJ 2, Resp. 3.) Plaintiff was charged with the following offenses: Obstructing administration of law or other governmental function, 18 Pa. C.S. §5101, a misdemeanor of the second degree; Failure of disorderly persons to disperse upon official order, 18 Pa.C.S. §5502, a misdemeanor of the second degree; and with Disorderly Conduct, 18 Pa. C.S. §5503, a misdemeanor of the third degree. (MSJ 2, Resp. 3.) Plaintiff states that Officer Tully gave a false account of the incident at the preliminary hearing on July 9, 2013, in order to corroborate false accounts he recorded in the affidavit of probable cause. (Resp. 3.) Plaintiff believes that her case was docketed for trial in the Court of Common Pleas of Bucks County based on these false representations. (Resp. 3.)

Plaintiff further states that the Officers provided false testimony at her trial in order to corroborate Officer Tully's version of events. (Resp. 3.) Plaintiff provided an audio recording of the incident that was authenticated as unedited by a Certified Forensic Examiner. (Resp. 3.) Defendant Officers nonetheless claimed that the recording had been edited, which Plaintiff states constitutes false testimony. (Resp. 3.)  At her criminal trial on these charges in Bucks County, Plaintiff was acquitted. (MSJ 2, Resp. 5.)

### c. Failure to Train

The Defendant Officers all received training at the police academy and state mandated annual training, which includes search and seizure laws, current law enforcement issues, and recent United States Supreme Court cases. (SOF ¶¶ 6-9; Johnson Dep. 72; Tully Dep. 13, 18; Lancieri Dep. 8-9; Margerum Dep. 10-11.) The Township has policies in place concerning the use of force, including the use of handcuffs. (SOF ¶ 11; Exhibit J.) The Defendant Officers were trained and tested on the policy regarding the use of handcuffs on April 30, 2012, October 1, 2012, and April 15, 2013; each of the Defendant Officers answered the test questions correctly. (SOF ¶ 12; Johnson Dep. 42.) The Defendant Officers were trained and tested on the policy regarding the use of force on May 21, 2012, November 12, 2012, and May 20, 2013; each of the Defendant Officers answered the test questions correctly. (SOF ¶ 12; Johnson Dep. 42.) The email responses with the answers are no longer available due to a change in servers used by the Township and therefore could not be verified. (RSOF ¶ 12; Johnson Dep. 44.) The Officer Defendants were further trained on the use of force by the Bucks County Police Training Center. (SOF ¶ 14; Ex. K.) In addition, all three officers received, and continue to receive, the appropriate training under Act 120 and Act 180. (Rep. 1, SOF ¶¶ 7-8.)

Officer Margerum testified that he could not recall receiving any formal training on when an officer is required or not required to arrest someone. (Resp. 5; Margerum Dep. 58:13-16.) He also testified that he has a 400 page policy manual in his locker that he has never read although he was required to read it. (Resp. 5; Margerum Dep. 59:1-60:1.) Further, Officer Margerum testified that he has no knowledge of the constitutional limitations on police conduct and that he does not recall receiving any training from Bristol Township about the constitutional limitations on police conduct. (Resp. 5; Margerum Dep. 101:23-102:5.)

### d. Failure to Supervise

Chief Johnson stated that the evaluation system used by the Township is a poor way to evaluate the performance of its officers and that the system has been "sporadic." (Resp. 6-7; Johnson Dep. 13:11-16, 16:7.) The evaluations were not objective and relied on "who likes who, who is in what clique." (Resp. 7; Johnson Dep. 16:23-25.) The criteria and requirements of the evaluations were not consistently explained to the officers, everyone "handled it differently." (Resp. 7; Johnson Dep. 19:19-23.) Furthermore, the performance evaluations did not capture all of the relevant criteria necessary for a police officer. (Resp. 7; Johnson Dep. 21:13-20.)

Officer Lancieri stated that he was unsure whether he received regular job evaluations and that, when he does receive evaluations, he just signs the evaluation without any conversation or explanation. (Resp. 6; Lancieri Dep. 21:15-23:1.) Officer Tully likewise testified that his performance evaluations have been "inconsistent." (Resp. 6; Tully Dep. 23:1-9.) Officer Margerum has not received a performance evaluation since January of 2009 and the performance evaluation form was never explained to him. (Resp. 5-6; Margerum Dep. 105:2-106:19.)

### e. Failure to Investigate and Discipline

The Bristol Township Police Department has received no complaints involving accusations of unlawful arrest or excessive use of force in the five years preceding this action. (SOF ¶ 3; Interrogatory No. [hereinafter "In. No."] 11.) Inherent in that, the Township has not received any complaints of unlawful arrest or excessive use of force regarding the Defendant Officers. (SOF ¶ 4; In. No. 22-69, 13.) Plaintiff agrees no complaints were found in discovery, but explains that the Township "has not demonstrated an understanding of an accurate or substantively appropriate definition of 'complaint.'" (RSOF ¶¶ 3-4.) Plaintiff cites Chief Johnson's testimony regarding citizen complaints against Officer Tully where the Chief stated "I just don't recall the specifics of [conversations with citizens] enough to tell you whether any of them were complaining in nature. But I'm sure, based on his assignment, there probably were a couple of those conversations." (RSOF ¶ 5; Johnson Dep. 74:9-13.)

The Bristol Township Police Department has a policy in place that sets forth the investigation and disciplinary process for complaints of alleged officer misconduct. (SOF ¶ 15; Ex. L.) Plaintiff admits such a policy exists but denies that they are trained or enforced. (RSOF ¶ 15.) Officer Lancieri has been the subject of approximately ten citizen complaints and has been named as a defendant in two additional civil rights lawsuits, including a wrongful death suit. (Resp. 6; Lancieri Dep., 30:13-16, 37:5-13.) Officer Tully believes that in his eighteen years as a police officer that he has had civilian complaints as well, but none that made it past an initial review. (Resp. 6; Tully Dep. 42:15-19.)

### III. Discussion

The United States Supreme Court has held that a municipality may be found liable under Section 1983 "only when the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Although Section 1983 imposes liability on municipalities, it does not follow that governments are vicariously liable for their employees'

5

acts. *Monell*, 436 U.S. at 694–95; *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Rather, it must be shown that the "government unit itself supported a violation of constitutional rights." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007); *see also Monell*, 436 U.S. at 694 (emphasizing that municipalities are liable only when execution of the policy or custom "inflicts the injury"). The law recognizes different methods of proof when plaintiffs attempt to prove a "custom" versus a "policy." *Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 678 (E.D. Pa. 2014). A "policy" is created when a person who possesses final decision-making authority "issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). A "custom," on the other hand, is proven "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Regardless of whether a Plaintiff alleges a "custom" or a "policy," she also "bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered." *Watson*, 478 F.3d at 156.

        a.  **Failure to Train**

A municipality, and its agencies, may be liable under section 1983 where the entity has a policy or custom which violates a plaintiff's constitutional rights. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[T]here are limited circumstances in which an allegation of failure to train can be the basis for liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). A district court must look to (1) whether the training program is adequate and (2) whether any inadequate training "can justifiably be said to represent city policy." *Id.* at 390. In other words, a municipality will only be liable for inadequate training if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* "Courts should be careful not to impose liability merely because municipal training could have been more thorough or comprehensive—that question will almost always be answered in the affirmative. Rather the question is whether the training should have been more thorough or comprehensive, an inquiry that focuses on the deliberate indifference standard." *Id.* at 392.

Plaintiff alleges the Township caused the violation of Plaintiff's constitutional rights by failing to train the Officers involved in Plaintiff's attempted arrest. (Resp. 9). Plaintiff failed, however, to point to sufficient facts in the record to demonstrate that the Officers were not properly trained. The Officers all received training at the police academy, state mandated annual training, including ongoing Act 120 and Act 180 training, and training on the use of force at the Bucks County Police Training Center. (Exhibit K; Johnson Dep. 72; Tully Dep. 13, 18; Lancieri Dep. 8-9; Margerum Dep. 10-11.) The Township has policies in place concerning the use of force, including the use of handcuffs, which the Officers were trained and tested on multiple times. (Exhibit J; Johnson Dep. 42.)

The best argument for failure to train lies with Officer Margerum, however, Plaintiff did not point to facts in the record demonstrating that the lack of training was the fault of the Township. Officer Margerum testified that he could not recall receiving any formal training on when an officer is required or not required to arrest someone or on the constitutional limitations on police conduct, (Resp. 5; Margerum Dep. 58:13-16), but he also testified that he has a 400 page policy manual in his locker that he has never read despite being required to do so and reporting to supervisors that he had done so. (Resp. 5; Margerum Dep. 59:1-60:1, 101:23-102:5.) Further, Officer Margerum testified that, in addition to his initial training, he has received ongoing in-class training and has continued to receive training updates from the Township throughout his employment. (Margerum Dep. 11:6-24; 60:14-61:7.)

Furthermore, even if there were a failure to train, Plaintiff has adduced no evidence to show that the Township was on notice that its training program, or lack thereof, was causing citizens to be deprived of their constitutional rights. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The Bristol Township Police Department has received no complaints involving accusations of unlawful arrest or excessive use of force in the five years preceding this action, (Interrogatory No. 11.), and, in that same timeframe, there has been only one meritorious civil suit filed against the Township regarding excessive force. *See Grant v. Winik*, 948 F.Supp.2d 480 (E.D. Pa. 2013) (evaluating an excessive force claim for the use of pepper spray). Therefore, there is no genuine dispute of material fact as to whether the Township had "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents" as is necessary for municipal liability. *Montgomery v. DeSimone*, 159 F.3d 120, 127 (3d Cir. 1998).

Because Defendant showed there is no genuine dispute of material fact as to Plaintiff's failure-to-train theory of *Monell* liability and Plaintiff failed to point to specific facts in the record to negate this, summary judgment in favor of Defendant Township is **GRANTED** as to this issue.

### b. Failure to Supervise

Similar to an allegation of failure to train, to succeed on a theory of failure to supervise, a plaintiff must prove deliberate indifference. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995). Plaintiff adduced significant evidence demonstrating that the evaluation system used by the Township is seriously flawed. The Chief of Police, Chief Johnson, recognized that the evaluation process is sporadic, a poor way to evaluate officers, lacks uniformity, fails to include all necessary criteria for successful policing, and is in part based on cliques and personal favoritism. (Johnson Dep. 13:11-16, 16:7-25, 19:19-23, 21:13-20, 27:19.) The Officers further substantiated these claims. Officer Margerum testified that the performance evaluation system was never explained to him and that, in any event, he has not received a performance evaluation since January 2009. (Margerum Dep. 105:2-5, 106:11-19.) Officer Lancieri similarly testified that he is unfamiliar with the evaluation process or its regularity; he simply signs his evaluations when he receives them without any discussion or explanation. (Lancieri Dep. 21:15-23:1.) Officer Tully likewise testified that the evaluation process is "inconsistent" in its timing, but testified to a more in-depth review process. (Tully Dep. 21:1-25:10.) Plaintiff points out that the lack of a consistent and effective evaluation system is particularly concerning when Officers Lancieri and Tully have had complaints filed against them. (Resp. 6.)

A reasonable jury could clearly find the evaluation system to be lacking. But courts have made clear that a "particularly willful type of recklessness" is inherent in the deliberate indifference standard, *Simmons v. City of Phila.*, 947 F.2d 1042, 1060 (3d Cir. 1991), and mere "negligence" is not enough, *Daniels v. Williams*, 474 U.S. 327, 341–42 (1986). In addition, under the deliberate indifference standard, a reasonable jury must also be able to find that the failure to supervise demonstrates a "deliberate" or "conscious" choice by the municipality. *Buoniconti v. City of Phila.*, No. CV 15-3787, 2015 WL 8007438, at *10 (E.D. Pa. Dec. 7, 2015) (quoting *Canton*, 489 U.S. at 391). Even still, given Chief Johnson's testimony, a reasonable jury could find that the failure to execute a proper evaluation system was a conscious choice by the policymakers.

8

"[P]roof of the mere existence of an unlawful policy or custom is not enough to maintain a § 1983 action. A plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Losch v. Bor. of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)). As a result, the critical question is whether a reasonable jury could find that the failure to supervise the officers through a proper evaluation system was the actual cause of Plaintiff's constitutional deprivation. To establish the necessary causation, a plaintiff must demonstrate a "plausible nexus" or "affirmative link" between the municipality's custom and the specific deprivation of constitutional rights at issue. *See Estate of Bailey by Oare v. Cnty. of York*, 768 F.2d 503, 507 (3d Cir.1985); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("there must be an affirmative link between the policy and the particular constitutional violation alleged").

This Court must therefore decide whether a reasonable jury could find that the failure to enact an effective evaluation system caused the Officers to unlawfully arrest Plaintiff, use unlawful force, and maliciously prosecute her. If there is past evidence of misconduct or there is the "existence of deficient department procedures for discovering officer misconduct" that caused the department to be unaware of such past contact, then the issue of municipal liability should be left to the jury. *Bielevicz v. Dubinon*, 915 F.2d at 851. The department procedures regarding officer evaluations were clearly deficient here. Critically, however, there is no evidence to suggest that there was in fact improper past conduct that the Township would have known about if only it had proper procedures. (MSJ 14-15; Rep. 3.) In order to show causation, there must be some evidence of either past violations of which the Township was aware or past violations of which the Township should have been aware if it had proper procedures. *Bielevicz v. Dubinon*, 915 F.2d at 850-51; *Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996). Without any evidence as to a history of these types of violations or any other nexus between the poor evaluation system and the Officers' behavior in this case, Plaintiff cannot point to specific facts in the record to create a material dispute of fact as to causation.

Because Defendant showed there is no genuine dispute of material fact as to Plaintiff's failure-to-supervise theory of *Monell* liability and Plaintiff failed to point to specific facts in the record to negate this, summary judgment in favor of Defendant Township is **GRANTED** as to this issue.

### c. Failure to Investigate or Discipline

"[A] failure to investigate may provide a means of establishing municipal liability, however the 'law requires multiple prior instances of a failure to investigate before a municipality is deemed to have developed a policy or custom.'" *Stewart v. Moll*, 717 F. Supp. 2d 454, 466 (E.D. Pa. 2010) (Goldberg, J.) (quoting *Blakey v. City of Pittsburgh Police*, 2010 WL 1254371, at *5 (W.D.Pa. Mar. 3, 2010)). In addition, the plaintiff must identify incidents other than just the one in which she herself was involved. *Turner v. City of Phila.*, 22 F. Supp. 2d 434, 437-38 (E.D. Pa. 1998) (Katz, J.). "A reasonable fact-finder may conclude that a Police Chief has constructive knowledge of constitutional violations where they are repeatedly reported in writing to the Police Department." *Hernandez v. Boro. of Palisades Park Police Dep't*, 58 F. App'x 909, 913 (3d Cir. 2003). "In addition, 'constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of [their] official responsibilities the [municipal policymakers] should have known of them.'" *Id.* (citing *Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir.1989)).

In support of Plaintiff's claim that the Township tolerated misconduct, Plaintiff points to Officers Lancieri and Tully admissions as to receiving civilian complaints, two civil rights suits against Officer Lancieri, and Officer Tully's charge of assaulting his children. (Resp. 9.) But Plaintiff fails to provide any evidence that these civil complaints in any way involved prior constitutional violations similar to those alleged here. In fact, the Township has received no complaints involving accusations of unlawful arrest or excessive use of force in the five years preceding this action. (SOF ¶ 3; Interrogatory No. 11.)

Plaintiff agrees no complaints were found in discovery, but explains that the Township "has not demonstrated an understanding of an accurate or substantively appropriate definition of 'complaint.'" (RSOF ¶¶ 3-4.) Plaintiff cites Chief Johnson's testimony regarding citizen complaints against Officer Tully where the Chief stated "I just don't recall the specifics of [conversations with citizens] enough to tell you whether any of them were complaining in nature. But I'm sure, based on his assignment, there probably were a couple of those conversations." (RSOF ¶ 5; Johnson Dep. 74:9-13.) Plaintiff does not, however, provide any evidence to suggest that these calls related to complaints of constitution violations, that they were not investigated, or that appropriate discipline was lacking as a result.

10

Plaintiff's inability to point to any facts in the record to demonstrate that there were similar complaints in the past, that the Township failed to investigate and properly discipline officers based on these complaints, and that Plaintiff's constitutional rights were violated as a result precludes Plaintiff from overcoming this Motion for Summary Judgment. After thorough discovery, there is simply not enough evidence to support Plaintiff's claims for municipal liability.

Therefore, summary judgment in favor of Defendant Township is GRANTED as to this issue.

### IV. Conclusion

The Court GRANTS Defendants' Motion as to all claims against Bristol Township; the moving Defendant, Bristol Township, is DISMISSED.

BY THE COURT:

/s/ C. Darnell Jones, II
C. DARNELL JONES, II    J.