IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DONNA GOLDEN, | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 14-3858 |
| | : | |
| JAMES TULLY, et al., | : | |
| Defendants. | : | |

**M E M O R A N D U M**

**SITARSKI, M. J.**                                                                         October 25, 2018

Currently pending before the Court is Plaintiff's Motion for New Trial (ECF No. 81), and Defendants' Response to Plaintiff's Motion for a New Trial (ECF No. 82). For the following reasons, the motion will be **DENIED**.

**I.   FACTS**

The factual background of this case is well-known to the parties, and will be summarized briefly here, only to the extent necessary for resolution of this motion.

The incident at issue took place in the early morning hours of April 27, 2013. On that date, Bristol Township Police Officers James Tully, John Lancieri, and Kenneth Margerum, defendants here, responded to a 911 call at Plaintiff's mother's residence. Plaintiff's mother (Patricia) and her boyfriend had been out for the evening, but had a disagreement, which led to Patricia needing a ride home from a neighborhood establishment. Upon receiving a call from Patricia, Plaintiff went and picked her up, and drove her to Patricia's residence. When Plaintiff and Patricia arrived at Patricia's residence, they found that Patricia's boyfriend had locked her

out.  Bristol Township Police Officers, defendants Tully, Lancieri, and Margerum, arrived at the location in response to the 911 call, and attempted to resolve the situation.

Plaintiff had begun recording her conversation with Patricia while the two were in the car driving to Patricia's home, using the recording function on her smart phone.  Plaintiff continued to record the events of the evening.  At trial, the entirety of the recording produced by Plaintiff was played to the jury, multiple times.

Plaintiff contended at trial that she recorded the entirety of her interaction with the police officer defendants, and that "the audio recording makes clear that the defendants did not have probable cause to effectuate [her] arrest[.]"  Pl.'s Mot. New Trial, ECF No. 81-1, at 12. Plaintiff's expert, Jason Silva, testified at trial that the recording made by Plaintiff had not been edited or "dubbed."  Pl.'s Mot. New Trial, ECF No. 81-1, at 10.

Defendants, on the other hand, contended at trial (and during the underlying criminal proceedings) that the recording did not fully capture the events on the evening in question.  The Defendants argued that Plaintiff was "out of control" and "inject[ed] herself into [their] conversation" with Patricia, and ignored "repeated, lawful instructions to let the police do their job."  Defs.' Resp. to Pl.'s Mot. New Trial, ECF No. 82, at 8-9.  Defendant Tully testified at the underlying criminal trial, and during the trial in this matter, that he believed the audio recording introduced at trial did not fully capture the events, and opined that the recording had been altered or "dubbed."  Defendants did not introduce expert testimony on the completeness or integrity of the audio tape.

The civil jury heard the audio recording multiple times.  Plaintiff maintained at trial that she was calm and polite while speaking with the police.  Plaintiff is heard on the recording

2

exchanging pleasantries with police officers when they arrived, and is heard giving the police officers information about Patricia, her boyfriend, and their dispute. The audio recording reveals that Officer Tully went to the apartment to speak to Patricia's boyfriend, and then returned to Plaintiff and Patricia. Officer Tully is heard offering advice to Patricia, and is heard warning Patricia that he does not wish to be called to the location again to "babysit drunks." Officer Tully states that if he returns to the location and sees signs of a struggle, either Patricia or her boyfriend – or both of them – could be arrested. Plaintiff is heard telling Officer Tully, "that's not nice," and disagreeing with Officer Tully's statements. Plaintiff is also heard asking Officer Tully for his name, and telling Officer Tully that her brother is a police sergeant. Plaintiff is heard telling Officer Tully, "you suck as a cop." At this point, Officer Tully orders Plaintiff to return to her car and leave, warning that she had "three seconds" before she would be arrested. Plaintiff is heard protesting, stating that she cannot move quickly because of a disability. Officer Tully puts Plaintiff under arrest, and Plaintiff can be heard yelling and crying. Officer Tully orders Plaintiff to walk to his patrol car, and Plaintiff continues to state that she is "handicapped." Plaintiff is walked to her car, and is informed that she will get a citation in the mail. *See* Pl.'s Ex. 2, unofficial transcript of audio recording generated by Plaintiff.

Plaintiff was charged with Obstruction of the Administration of Law or Other Governmental Function; Failure to Disperse upon Official Order; and Disorderly Conduct. As noted above, the defendants testified at the underlying criminal trial, contending that Plaintiff was out of control on the night in question. Officer Tully offered rebuttal testimony after the audio tape was played during the criminal proceedings, opining that the audio recording had been altered or edited.

3

Following a trial, Plaintiff was found not guilty of all three misdemeanor offenses. Plaintiff thereafter filed this lawsuit, asserting claims of unlawful arrest, malicious prosecution, and excessive force. Plaintiff also asserted a state law malicious prosecution claim.

A jury trial in this matter began on March 5, 2018. Plaintiff testified, as did her mother (Patricia), and Plaintiff's ex-husband, who was also present during the events of April 27, 2013. Plaintiff also called expert witnesses, including medical experts and an audio expert, Jason Silva. As noted, the audio recording made by Plaintiff was played in its entirely multiple times during the trial. The defendant officers also testified, as did medical experts called by Defendants. Following four days of testimony, the jury deliberated, and returned a verdict in favor of Defendants as to all claims.

Plaintiff now moves for a new trial on two grounds: 1) that the jury verdict was "against the great weight of the evidence;" and 2) the "jury was not instructed on a stand-alone fabrication [of evidence] cause of action, despite supporting facts being well pled in plaintiff's Complaint." Pl.'s Mot. New Trial, ECF No. 81-1, at 3.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59 allows a trial court to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). The decision to grant a new trial is within the trial court's discretion. *See Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992). "Such an endeavor is not, however, lightly undertaken, because it necessarily 'effects a denigration of the jury system and to the extent that new trials are granted the judge

takes over, if he does not usurp, the prime function of the jury as the trier of the facts.'" *Guynup v. Lancaster Cty.*, No. 06-4315, 2009 WL 541533, at *1 (E.D. Pa. Mar. 3, 2009) (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960)). "Courts have granted new trials when there have been prejudicial errors of law or when the verdict is against the weight of the evidence." *Jones v. City of Phila.*, No. 90-02974, 2008 WL 1794842, at *1 (E.D. Pa. Apr. 18, 2008).

### III. DISCUSSION

#### A. Whether the Verdict was Against the Weight of the Evidence.

When the asserted basis for a new trial is that the jury verdict is against the weight of the evidence, a trial court should grant a new trial "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the court's] conscience." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 366 (3d Cir. 1999) (quoting *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991)). In reviewing a motion for a new trial, the court must "'view all the evidence and inferences reasonably drawn therefrom in the light most favorable to the party with the verdict.'" *Marino v. Ballestas*, 749 F.2d 162, 167 (3d Cir. 1984) (quoting *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)).

When the district court grants a motion for a new trial based on the weight of the evidence, the court has:

> to some extent at least, substituted [its] judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the

prime function of the jury as the trier of facts.

*Williamson*, 926 F.2d at 1352 (quoting *Lind*, 278 F.2d at 90). Accordingly, the district court ought to grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand. *E.E.O.C. v. Delaware Dep't of Health & Social Servs.*, 865 F.2d 1408, 1413 (3d Cir. 1989) (quoting *Shanno v. Magee Indus. Enters., Inc.*, 856 F.2d 562, 567 (3d Cir. 1988)). Where the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations such as passing "upon the nature of an alleged newly discovered organic compound in an infringement action." *Lind*, 278 F.2d at 90-91.

Plaintiff's brief in support of her motion recounts, in great detail, the testimony that Plaintiff believes supports her version of events. Plaintiff characterizes the testimony of the various witnesses, and ultimately concludes that her witnesses testimony, and her theory of the case, should have been credited by the jury, and the verdict should have been in her favor. Central to Plaintiff's contention is the audio recording, which the jury heard multiple times during the course of the trial. The jury gave that recording whatever weight it deemed appropriate. Plaintiff also emphasizes that the testimony of Jason Silva was unrebutted, and this "established that the audio file is legitimate and reliable and unedited." Pl.'s Mot. New Trial, ECF No. 81-1, at 10.

The jury weighed all of the evidence, decided what portions of the evidence to credit, and what portions of the evidence to reject, and rendered its verdict. "Credibility determinations are the unique province of a fact finder, be it a jury, or a judge sitting without a jury." *United States*

*v. Kole*, 164 F.3d 164, 177 (3d Cir. 1998), *cert. denied*, 526 U.S. 1079 (1999); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). Questions about credibility and weight of expert opinion testimony are also for the trier of facts, since such testimony is ordinarily not conclusive. *See Minnesota Mining & Mfg. Co. v. Berwick Indus.*, 532 F.2d 330, 333 (3d Cir. 1976) (citing *Sartor v. Arkansas Nat. Gas Corp.*, 321 U.S. 620, *reh'g denied*, 322 U.S. 767 (1953)); *United States v. Barton*, 992 F.2d 66, 69 (5th Cir. 1993). The fact finder is free to accept or reject expert testimony as it deems proper, even if such testimony is uncontroverted. *Kelly v. Crown Equip. Corp.*, No. 91–1143, 1991 WL 208771, *3 (E.D. Pa. Oct. 8, 1991), *aff'd*, 970 F.2d 1273 (3d Cir. 1992), *reh'g denied*, (Aug. 25, 1992).

In this case, four claims went to the jury: an excessive force claim against Officer Tully only; as to Officers Tully, Lancieri, and Margerum, federal unlawful arrest and malicious prosecution claims, and a state law malicious prosecution claim. Verdict Sheet, ECF No. 73. The jury heard evidence with regard to the interaction between Officer Tully and Plaintiff on the date in question. Plaintiff argues, as she did at trial, that Officer Tully "intentionally used force against [her] which was excessive and unreasonable." Pl.'s Mot. New Trial, ECF No. 81-1, at 17. Multiple witnesses testified at trial as to what transpired between Officer Tully and Plaintiff on the date in question. The jury considered this testimony along with other evidence, including Plaintiff's medical experts and the recording from Plaintiff's smartphone, and concluded that Plaintiff failed to meet her burden of establishing that Officer Tully used excessive force against her. It is not for this Court to usurp the role of the jury in reaching this conclusion when the evidence supports the verdict.

The jury similarly considered and rejected Plaintiff's false arrest and malicious

7

prosecution claims. Verdict Sheet, ECF No. 73. Plaintiff argues that there was no probable cause to arrest Plaintiff for Obstructing the Administration of Law or Other Governmental Function, 18 Pa.C.S.A. § 5101, Failure of Disorderly Persons to Disperse Upon Official Order, 18 Pa.C.S.A. § 5502, and Disorderly Conduct, 18 Pa.C.S.A. § 5502. Plaintiff's argument with regard to these claims is that the jury should have credited her version of events over defendants' version. For example, Plaintiff states that she "did nothing to hinder the police, nor their duties, and from the audio recording it is clear that probable cause did not exist to arrest nor prosecute Plaintiff," that "all civilians present [on the scene] were behaving reasonably," and "Plaintiff had no intent to cause any problems." Pl.'s Mot. New Trial, ECF No. 81-1, at 13-14. The jury heard contrary evidence from the police officers, listened repeatedly to the audio recording, and concluded that probable cause existed for Plaintiff's arrest on the three charges lodged against her. The officers' testimony, along with the audio recording, would permit a jury to reasonably conclude that the officers did not violate Plaintiff's constitutional rights.

In sum, Plaintiff here advances the same arguments presented to – and rejected by – the jury. The jury heard the arguments, assessed the witness testimony, considered the exhibits, and chose to render a verdict in Defendants' favor. *Washington v. Doran,* 717 F. App'x 151, 154 (3d Cir. 2017). Plaintiff has not demonstrated that the jury's verdict "cries out to be overturned or shocks [the] conscience." *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993). In recognition of the time-honored authority of the jury to render a verdict based on its collective wisdom, *New Market Inv. Corp. v. Fireman's Fund Ins. Co.*, 774 F. Supp. 909, 917 (E.D. Pa. 1991), this trial court must exercise restraint to avoid usurping the jury's primary function. *Borbely v. Nationwide Mut. Ins. Co.*, 547 F. Supp. 959, 980 (D.N.J. 1981). I decline the

invitation to step in and usurp the jury's role as fact-finder.

### B. Whether This Court's Refusal to Give Jury Instruction Requires a New Trial

Plaintiff next contends that this Court erred in refusing to instruct the jury on a stand-alone Fourteenth Amendment claim of fabrication of evidence. In *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014), the Third Circuit recognized, for the first time, that a stand-alone fabrication of evidence can be pursued in cases where "fabricated, suppressed, and destroyed evidence" results in a conviction. In *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016), the Third Circuit reasoned that an acquitted criminal defendant (such as Plaintiff here) can also bring such a claim if "there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged."[1]

When the asserted basis for a new trial is trial error by the judge, "'the court's inquiry . . . is twofold. It must first determine whether an error was made in the course of the trial, and then must determine whether the error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice.'" *Guynup*, 2009 WL 541533, at *2 (quoting *Farra v. Stanley-Bostitch, Inc.*, 838 F. Supp. 1021, 1026 (E.D. Pa. 1993)).

### 1. Whether the Court Erroneously Refused to Give the Instruction.

Plaintiff argues that the Court erred by refusing to charge the jury on a stand-alone Fourteenth Amendment fabrication of evidence due process claim, as Plaintiff requested in proposed points for charge submitted on February 22, 2018. Jt. Proposed Pts. for Charge, ECF No. 61, at 24. Central to this allegation of error is Plaintiff's contention that this claim was

---

[1] The Third Circuit also addressed stand-alone fabrication of evidence claims in two non-precedential decisions, *Boseman v. Upper Providence Township,* 680 F. App'x 65 (3d Cir. 2017); and *Villarosa v. North Coventry Township*, 711 F. App'x 92 (3d Cir. 2017). Those cases

9

fairly raised in her Complaint, and thus the Court should have submitted this claim to the jury. Plaintiff argues in her Motion for New Trial that the Complaint "gave defendant[s] fair notice of a fabrication claim as the Complaint alleged fabrication throughout" and "clearly asserted that the criminal prosecution proceeded entirely on the fabricated reports and testimony of the defendants." Pl.'s Mot. New Trial, ECF No. 81-1, at 18. Plaintiff points to her use of the terms "false charges" and "false testimony" in multiple paragraphs of the Complaint, and her citation to the Fourteenth Amendment in Count I. Pl.'s Compl., ECF No. 1, at ¶¶ 33-34, 36, 41, 44-45, 49, 51.

As Plaintiff acknowledges, Federal Rule of Civil Procedure 8 requires that a complaint must give the defendant fair notice of the plaintiff's claims. Rule 8 requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft*, 556 U.S. at 678.

This Court rejects Plaintiff's contention that a fabrication of evidence claim was asserted in her Complaint. Count I of Plaintiff's Complaint references only the federal Constitutional right to be free from "unlawful arrest, the unlawful use of force, and malicious prosecution." Pl.'s Compl., ECF No. 1, at ¶ 51. Indeed, the "Preliminary Statement" to Plaintiff's Complaint recites, in relevant part: "This is Civil Rights [sic] action brought under 42 U.S.C. §1983 . . . concerning the actions of defendant Bristol Township Police Officers James Tully, John Lancieri, and Kenneth Margerum in *unlawfully, arresting, maliciously prosecuting and using excessive*

---

are instructive, and will be discussed *infra*.

*and unreasonable force against plaintiff Donna Golden."* Pl.'s Compl., ECF No. 1, at ¶ 1 (emphasis supplied). Plaintiff generally avers in her Complaint that the officers "falsely" testified, and caused "false" charges to be filed against her. *Id.* at ¶¶ 33-34, 36, 41, 44-45, 49, 51. Nowhere in her Complaint does Plaintiff identify a stand-alone Fourteenth Amendment fabrication of evidence claim.

Plaintiff's Pretrial Memorandum, filed on September 18, 2017, again omitted any specific mention of a stand-alone Fourteenth Amendment fabrication of evidence claim. Plaintiff stated: "This is Civil Rights [sic] action brought under 42 U.S.C. §1983 alleging Fourteenth Amendment and Fourth Amendment claims of *false arrest, excessive force, and malicious prosecution."* Pretrial Memorandum, ECF No. 47, at 1. While the Pretrial Memorandum continues to reference "false testimony" and "false charges," nowhere in the Memorandum does Plaintiff state that she is asserting a stand-alone Fourteenth Amendment "fabrication of evidence" claim.

On the eve of trial (February 22, 2018), Plaintiff submitted a proposed jury instruction on a Fourteenth Amendment "Manufactured Evidence" claim. Plaintiff requested a jury charge on a stand-alone claim for "14th Amendment – Manufacturing Evidence." Jt. Proposed Pts. for Charge, ECF No. 61, at 24. Specifically, Plaintiff proposed the following jury instruction:

> In this case, the Plaintiff has alleged that the defendants fabricated evidence in the form of false police reports and testimony, which led to the prosecution of Plaintiff. If you find that the evidence was fabricated, and it is reasonably likely that without that fabricated evidence the defendant would not have been criminally charged, there is a deprivation of liberty without due process of law. "Evidence" refers not only to physical evidence, but also to the testimony of witnesses.

> To find that evidence in the criminal prosecution of the plaintiff

> was fabricated, there must be persuasive evidence that supports a conclusion that a defendant was aware that his testimony was incorrect or that it was offered in bad faith. Evidence that was incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong.

*Id*. Defendant objected, stating "this is not a claim in this matter." *Id.* Plaintiff noted the defendants' objection, and, for the first time, asserted that "this [14th Amendment manufacturing of evidence claim] is a claim in this matter." *Id*. The parties appeared for a final pretrial conference on March 2, 2018, at which time this Court determined that the fabrication of evidence claim had not been asserted in the Complaint. I determined that allowing a new claim to proceed to the jury would have been highly prejudicial to the Defendants. Thus, I advised counsel that the jury would not be instructed on a claim that had not been asserted until the eleventh hour. Jury selection began immediately after the final pretrial conference.

Plaintiff now contends that the Court erred in refusing to submit this claim to the jury. Plaintiff argues that her Complaint, filed in 2014, did in fact assert a stand-alone Fourteenth Amendment fabrication of evidence claim, and that it was "pled in the Complaint under plaintiff's malicious prosecution counts." Pl.'s Mot. New Trial, ECF No. 81-1, at 18. I disagree. Plaintiff never articulated a stand-alone Fourteenth Amendment claim in her Complaint, or in her Pretrial Memorandum. In contrast, Plaintiff specifically and clearly identified her false arrest, excessive force, and malicious prosecution claims. Plaintiff's use of the words "false" and/or "falsely" in the Complaint does not meet the Rule 8 standard. These adjectives and adverbs did not fairly apprise Defendants (or this Court) that Plaintiff intended to pursue the stand-alone "fabrication of evidence" claim.[2]

---

[2] This Court rejects any suggestion that Plaintiff's sprinkling her Complaint with the

"[A] trial judge possesses the discretion to prohibit parties from raising matters they have failed to advance during the pretrial proceedings." *Sample v. Diecks*, 885 F.2d 1099, 1106 (3d Cir. 1989); *see also O'Malley v. Potter*, No. 05-986, 2006 WL 2433315, at *4 (E.D. Pa. Aug. 18, 2006). As discussed fully above, the Complaint as drafted by Plaintiff failed to properly put defendants on notice of an alleged fabrication of evidence claim. Plaintiff did not raise this claim until the eve of trial.[3] Accordingly, this Court did not err in refusing to charge the jury on fabrication of evidence.

### 2. Whether Any Error in Declining a Jury Charge on Fabrication of Evidence was So Prejudicial So as to Be Inconsistent With Substantial Justice.

Even assuming this Court erred by declining to charge the jury on a Fourteenth Amendment fabrication of evidence claim, any error was not so prejudicial so as to be inconsistent with "substantial justice."

---

words "false" and "falsely" provided fair notice that a fabrication claim was being asserted. "Judges are not like pigs, hunting for truffles buried in the record." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006). Nor is it appropriate for Plaintiff to expect defendants (or the Court) to sift through the allegations in her Complaint to piece together the claims asserted. *Thomas v. United Parcel Serv., Inc.*, 2010 WL 3636230 (D.N.J Sept. 9, 2010); *see also LaRochelle v. Wilmac Corp.*, 2016 WL 6135577, *1 n.1, (E.D. Pa. Oct. 21, 2016).

[3] Though leave to amend a complaint should be freely granted in the interests of justice, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), a motion to amend is committed to the sound discretion of the district judge. FED. R. CIV. P. 15(a). Leave to amend is properly denied in cases of: (1) undue delay; (2) bad faith or dilatory motive; (3) unfair prejudice; or (4) futility of amendment. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiff here never sought leave to amend her Complaint, instead insisting that the fabrication of evidence claim had been properly pled. Regardless, amendment would have been inappropriate given Plaintiff's undue delay in seeking leave to amend, and the prejudice that would have inured to Defendants if they were forced, on the eve of trial, to begin defending against a newly-asserted cause of action.

13

### a) Third Circuit Cases on 14th Amendment Fabrication of Evidence Claims.

The Third Circuit first recognized a stand-alone fabrication of evidence claim in *Halsey,* and further defined the parameters of the claim in *Black*. The Third Circuit also discussed this claim in a non-precedential decision, *Boseman v. Upper Providence Township*, 680 F. App'x 65 (3d Cir. 2017).

*Halsey* concerned a case where a mentally challenged young man was convicted of murdering two small children based on a coerced, false confession. 750 F.3d at 279. After 22 years in prison, the defendant was exonerated, in part, by DNA evidence that conclusively established that someone else had committed the murders. *Id.* at 285-86. His false, coerced confession was the only direct evidence linking him to the crimes, and the Court found that without the fabricated evidence, there was a reasonable likelihood that that Halsey would not have been convicted. *Id.* at 291-92. The *Halsey* court thus recognized a stand-alone Fourteenth Amendment fabrication of evidence claim. "[I]f a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted." *Id.* at 294. In so holding, the *Halsey* court specifically cautioned that its holding was limited, and it would be the "unusual" case where a police officer defendant would not be entitled to summary judgment or judgment as a matter of law on a claim that he had fabricated evidence in a criminal case. *Id.* at 295. "[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Id.*

The Third Circuit revisited stand-alone fabrication of evidence claims in *Black*. 935

F.3d 358. Black was criminally charged with arson, but was acquitted at trial. *Id.* at 362-63. Black then filed a civil action under § 1983, alleging that the investigators had fabricated inculpatory evidence and suppressed exculpatory evidence. *Id.* at 363. The defendant's motion to dismiss the § 1983 claim was granted on the grounds that Black had not been convicted, and the fabrication claim announced in *Halsey* extended only to cases where the fabrication had resulted in conviction. *Id.* On appeal, the Third Circuit held that conviction was <u>not</u> required for a plaintiff to bring a fabrication of evidence claim. *Id.* at 371. The claim might also be brought by an acquitted criminal defendant "if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Id.* The Third Circuit repeated its' caution from *Halsey:* "there is a notable bar for evidence to be considered 'fabricated.' We have noted that 'testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong.'" *Id.* at 372 (quoting *Halsey,* 750 F.3d at 295).

Our Circuit again examined the parameters of a fabrication of evidence claim in the non-precedential *Boseman* decision. 680 F. App'x 65. Boseman had been charged with Driving Under the Influence, proceeded to trial, and was found not guilty. *Id.* at 67. She then filed a § 1983 claim against the arresting officer, citing as fabricated evidence the "boilerplate" DUI observations recorded by the arresting officer in the arrest report: a strong odor of alcohol, glassy eyes, slurred speech, unsteady gait, flushed face. *Id.* The District Court granted defendants' motion to dismiss without prejudice to Plaintiff's right to file an amended complaint, but Plaintiff instead appealed the decision to the Third Circuit. On appeal, our Circuit reiterated what it stated in *Halsey* and *Black*. A fabrication of evidence claim will not survive where the

15

"fabricated" evidence consists of disputed statements in a police report, or "he-said, she-said" testimony. *Id.* at 70. The Court stated: "our case law is clear that 'testimony that is … simply disputed should not be treated as fabricated…'" *Id.* at 70 (quoting *Black*, 835 F.3d at 372). The Court emphasized that a fabrication of evidence claim may proceed only in the "unusual case" where there is "actual evidence of fabrication." *Id.*[4]

### b) The "Fabricated" Evidence Cited by Plaintiff Donna Golden.

Plaintiff's Motion for a New Trial identifies two instances of fabrication. She first contends that the affidavit of probable cause "contained various fabrications." Pl.'s Mot. New Trial, ECF 81-1, at 9. Next, she contends that the defendants testified falsely against her at the criminal trial, and that defendant Tully offered his opinion at the criminal trial that the audio recording had been "dubbed." *Id.*

I address the second of these contentions first. The suggestion that a fabrication of evidence claim existed because defendants had testified falsely against plaintiff at her criminal trial is inconsistent with the rule announced in *Black*. The *Black* Court made clear that an

---

[4] The Third Circuit also touched upon a stand-alone fabrication claim in *Villarosa v. North Coventry Township*, 711 F. App'x 92 (3d Cir. 2017). There, the criminal defendant was arrested on the basis of an affidavit of probable cause prepared by a police officer who was alleged to have coerced minors into making incriminating statements against Villarosa, which were included in the affidavit of probable cause. The charges were dismissed and/or nolle prossed at the preliminary hearing stage. Villarosa filed a §1983 claim, suggesting that the police officer defendants were "out to get" her, and that the incriminating statements by the minors were "fabricated." The District Court granted defendants' Motion to Dismiss, and the Third Circuit affirmed. The Court stated, "[t]o the extent Villarosa asserts a Fourteenth Amendment violation resulting from the various 'fabrications and omissions' in Officer Malason's affidavit of probable cause, that claim fails as well." 711 F. App'x 92, 97 n.5. The Court reasoned, "[e]ven accepting Villarosa's questionable premise that falsehoods or omissions in an affidavit can qualify as fabricated *evidence* for purposes of a Fourteenth Amendment claim," the truthful portions of the affidavit contained were "sufficient to support a finding of probable cause . . . there is no reasonable inference that, absent those falsehoods and omissions,

16

acquitted criminal *may* have a viable fabrication claim where "there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." 835 F.3d at 371. A plaintiff must demonstrate a "meaningful connection" between the injury and the use of the fabricated evidence. *Boseman,* 680 F. App'x. at 69 (quoting *Halsey*, 750 F.3d at 294 n.19). Testimony offered at the criminal trial obviously cannot be the basis for criminal charges having been brought in the first place.

As to the affidavit of probable cause that led to criminal charges being filed, this contention was directly addressed in *Boseman*. There, as here, the § 1983 plaintiff claimed that false police paperwork led the District Attorney to pursue criminal charges. 680 F. App'x at 69. The *Boseman* Court repeated the limitations recognized in *Halsey* and *Black*. A fabrication of evidence claim requires "actual evidence of fabrication." *Id.* at 70. Mere "denials" or disagreements with conclusions contained in police reports will not support a fabrication claim. *Id.*; *see also Villarosa*, 711 F. App'x at 97.

Hence, when I consider the "fabricated" evidence relied upon by Plaintiff here in the context of the Third Circuit law governing this claim, I conclude that this Court's refusal to instruct the jury on the belatedly-asserted fabrication of evidence claim was not error that was so prejudicial as to be inconsistent with "substantial justice." The Third Circuit has repeatedly cautioned that fabrication claims cannot proceed where the basis of the claim is testimony that is "incorrect or simply disputed." *Halsey,* 750 F.3d at 295; *Black*, 835 F.3d at 372; *Boseman*, 680 F. App'x at 70. Plaintiff's fabrication claim is premised on exactly that type of evidence: allegations that the officers made "false" statements, and testified "falsely" against her. Thus,

---

Villarosa would not have been criminally charged." *Id.*

any error in refusing to allow this claim to go to the jury does not warrant a new trial.

## IV. CONCLUSION

For all the reasons stated herein, Plaintiff's Motion for a New Trial is denied. An appropriate order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE